Gene W. Rosen, Esq.
New York Office of Court Administration Registration No. 4435681
Gene Rosen's Law Firm
A Professional Corporation
200 Garden City Plaza, Suite 405
Garden City, New York 11530
Tel (212) 529-3600 Ext. 101
Fax (347) 578-8793
Gene@GeneRosen.com
Attorneys for Plaintiff-Creditor LG Funding LLC

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO
-----------------------------------------------------------X
In re:                                                              Case No. 20-14530-JGR

      JAMES TOLIVER CRAIG,                   Chapter 11

              Debtor.
-----------------------------------------------------------X
LG FUNDING LLC,                                                     Adv. Pro No.

              Plaintiff,

  - against -

JAMES TOLIVER CRAIG,

              Defendant.
-----------------------------------------------------------X

**COMPLAINT FOR EXCEPTION TO DISCHARGE PURSUANT TO 11 U.S.C. § 523**

      Plaintiff LG Funding LLC, in its capacity as Creditor, by and through its undersigned attorneys, file this adversary complaint and allege as follows:

**JURISDICTION AND VENUE**

      1.    This adversary proceeding arises out of the debtor's chapter 11 bankruptcy case and is commenced pursuant to chapter 5 of the Bankruptcy Code (11 U.S.C. § 501, *et seq.*) and

Rule 7001 of the Federal Rules of Bankruptcy Procedure.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. Plaintiff consents to the entry of a final order or judgment by this Court.

## THE PARTIES

5. Plaintiff LG Funding LLC ("LG") is a limited liability company formed under the laws of the State of New York with its principal office located 1218 Union Street, Brooklyn, New York 11225. LG was at all relevant times a creditor of the debtor.

6. Defendant James Toliver Craig is the debtor in this bankruptcy case and a resident of the State of Colorado residing at 6795 S. Robertsdale Way, Aurora, Colorado 80016.

## THE FACTS

7. LG is the in the Merchant Cash Advance ("MCA") business of buying future business receivables at discounted prices.

8. At all times hereinafter mentioned, Summerbrook Dental Group, PLLC ("Summerbrook") was and still is a professional limited liability company formed under the laws of the State of Colorado.

9. Summerbrook operates a dental practice.

10. Defendant was and still is the principal of Summerbrook.

11. On September 26, 2019, Summerbrook made an application for funding for its

business by completing an application form and providing copies of its bank statements and authorizations to conduct credit checks and other searches relating to Summerbrook.

12. LG received Summerbrook's application for funding.

13. After reviewing Summerbrook's submissions, LG approved Summerbrook for an MCA transaction whereby LG would pay Summerbrook $100,000.00, less contractual fees, in exchange for $136,000.00 of Summerbrook's future receiveables, which would be collected by debiting 25% of the receipts from Summerbrook's bank account until LG would be paid in full.

14. LG prepared its standard form agreement for review and execution by Defendant, in his capacity as owner of Summerbrook and as a guarantor of performance of Summerbrook's obligations under the agreement.

15. Defendant was sent LG's standard form agreement ("Original Contract"). A true and correct copy of the Original Contract is annexed hereto as **Exhibit "A"**.

16. Defendant made hundreds of alterations to the Original Contract.

17. Defendant made scores of alterations to the Original Contract that affected its material terms.

18. A true and correct copy of the Original Contract, as altered, highlighted to show where material alterations were made, is annexed hereto as **Exhibit "B"**.

19. Examples of the alterations made to the Original Contract follow below.

20. Section 12 of the Original Contract had stated in relevant part that "LG is entering into this Agreement knowing the risks that Merchant's business may decline or fail, resulting in LG not receiving the Receivables Purchased Amount" but was altered to state instead that "[f]ailure of LG to read and understand this agreement may result in LG not receiving anything."

21. Section 35 of the Original Contract had stated in relevant part that all notices be delivered by certified mail, return receipt requested, to the respective parties at their addresses set forth in the Original Contract but was altered to state instead that "[a]ll notices … from LG shall be delivered by singing telegram only".

22. Section 37 of the Original Contract had stated in relevant part that in an arbitration between the parties, any witness who did not reside in or have a place of business located in the specified locations "will be permitted to appear and testify remotely by telephone or video conferencing" but was altered instead to state that in an arbitration, any witness who resides in or has a place for the transaction of business in New York City, Long Island, or Westchester County "must appear in person and wear a clown nose."

23. Defendant did not inform LG that he sought to negotiate any of the terms of the Original Contract.

24. Craig did not request permission to alter the Original Contract.

25. Craig did not inform LG that he altered the Original Contract.

26. Under the Original Contract, Summerbrook was to sell LG $136,000.00 ("Purchased Amount") of Summerbrook's accounts, contract rights, and other obligations arising from or relating to the payment of monies from Summerbrook's customers and other third party payors ("Receivables") for the sum of $100,000.00 ("Purchase Price"), less contractual fees, to be paid to LG from 25% of Summerbrook's daily revenue. **Exhibit "A" at page 1**.

27. Prior to paying Summerbrook the Purchase Price, LG conducted a phone call with Defendant.

28. During the phone call, LG requested that Defendant confirm that Summerbrook had

agreed to the payment arrangements set forth in the Original Contract and Defendant did not indicate that he altered the Original Contract.

29. LG would never have proceeded to consummate a transaction with Summerbrook had LG been aware that Defendant altered the Original Contract.

30. Through his statements, acts, and omissions, Defendant lied to LG about Summerbrook's agreement to the payment terms of the Original Contract.

31. Defendant intended to defraud LG.

32. LG reasonably relied on Defendant's representations.

33. LG was not aware that Defendant had altered the Original Contract.

34. By reason of Defendant's foregoing fraud, LG has suffered damages.

35. Under the Original Contract, Summerbrook was to agree that in the event of its default under the Original Contract, the full uncollected Purchased Amount plus all fees due under the Original Contract would become immediately due and payable in full to LG. **Exhibit "A" at ¶ 12 (Protection 1)**.

36. Under the Original Contract, Summerbrook was to agree that if LG prevails in any arbitration between the parties then Summerbrook must pay LG prejudgment interest at a rate of 16% per annum. **Exhibit "A" at ¶ 37**.

37. LG paid Summerbrook the Purchase Price, less contractual fees, on September 27, 2019. A true and correct copy of the funding confirmation is annexed hereto as **Exhibit "C"**.

38. A list of all payments LG debited or attempted to debit from the designated bank account ("Designated Account") from which Summerbrook agreed to permit LG to withdraw Receivables is annexed hereto as **Exhibit "D"**.

39. Summerbrook breached the Original Contract by defaulting on its representations and warranties to LG under the Original Contract and by preventing LG from collecting the Purchased Amount.

40. LG would have held Summerbrook in breach of the Original Contract on November 29, 2019.

41. Summerbrook would have owed LG $108,800.00 of the Purchased Amount under the Original Contract.

42. Summerbrook would have owed LG $195.00 for a UCC fee under the Original Contract. **Exhibit "A" at ¶ 1(E)**.

43. Summerbrook would have owed LG $50.00 for a Not Sufficient Funds ("NSF") fee under the Original Contract due to an instance in which LG's debit to the Designated Account was rejected. **Exhibit "A" at ¶ 1(B)**.

44. The transaction for which Summerbrook would have owed LG an NSF fee is indicated by a comment in the rightmost column of the payment list stating the transaction was returned followed by an unchecked box (☐). *See* **Exhibit "D"**.

45. Summerbrook would have owed LG $2,500.00 for a Default Fee under the Original Contract. **Exhibit "A" at ¶ 1(C)**.

46. Pursuant to the terms of the Original Contract, Summerbrook would have agreed to pay LG's reasonable attorneys' fees. **Exhibit "A" at ¶ 37**.

47. Defendant would have executed a guarantee of performance of all the representations, warranties, and covenants made by Summerbrook in the Original Contract. **Exhibit "A" at pages 11-13**.

48. By reason of the guarantee, Defendant would have been obligated to pay LG's reasonable attorneys' fees. **Exhibit "A" at ¶ 37 and page 11**.

49. Although the Original Contract was heavily altered, it still provided for arbitration of disputes before Arbitration Services, Inc. ("ASI") under its Commercial Arbitration Rules ("Rules"). **Exhibit "A" at ¶ 37 and page 11**.

50. A printout of the Rules is annexed hereto as **Exhibit "E"**.

51. LG initiated an arbitration ("Arbitration") against Summerbrook and Defendant at ASI on December 4, 2019.

52. On December 4, 2019, Defendant was duly served with a demand for arbitration, a statement of claim, and a copy of the agreement to arbitrate.

53. Neither Summerbrook nor Defendant filed for a stay of the arbitration.

54. Rule 33(a) of the Rules states that "ASI shall give notice of such filing to the Respondent or Respondents within five days." *See* **Exhibit "E"**.

55. On December 4, 2019, ASI gave notice of the filing to the respondents in the Arbitration.

56. Rule 6(d) of the Rules requires a respondent to file an answering statement within 15 days after ASI gives notice of the filing of the demand for arbitration, stating that:

> A Respondent must file an answering statement in duplicate with ASI within fifteen days after notice from ASI, in which event the Respondent shall at the same time send a copy of the answering statement to the Claimant and any counterclaim Respondent may want to assert.

*See* **Exhibit "E"**.

57. Rule 6(f) of the Rules states that "[i]f no answering statement is filed within the

stated time Respondent shall be deemed to be in default." *See* **Exhibit "E"**.

58. Summerbrook and Defendant did not file an answering statement within 15 days after ASI gave notice of the filing of the demand for arbitration and their time to do so was not extended.

59. Rule 6(h) of the Rules states that "[f]ailure to file an answering statement shall not operate to delay the arbitration." *See* **Exhibit "E"**.

60. Rule 23 of the Rules authorizes the issuance of an arbitration award on default, stating that:

> Unless the law provides to the contrary, the arbitration may proceed in the absence of any party who, after due notice pursuant to these rules, fails to appear at a hearing or is otherwise unable or unwilling to participate in the hearing. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

*See* **Exhibit "E"**.

61. On January 3, 2020, Allan L. Pullin, as Arbitrator, after having taken the oath prescribed by law and after the parties had duly submitted their proofs or had the opportunity to do so, and having fully considered all of the evidence and arguments submitted and having come to a decision, duly made his arbitration award ("Award") in writing, whereby he determined and awarded that there is $158,989.83 due to LG from the Summerbrook and Defendant, jointly and severally. A true and correct copy of the Award is annexed hereto as **Exhibit "F"**.

62. The award has not been vacated or modified.

63. On May 19, 2020, LG filed an application to confirm the award in the Supreme Court of New York, Nassau County, under index number 616918/2019 (New York State Court

Electronic Filing System Docs. Nos. 19-30).

64. On July 1, 2020, Defendant filed a petition for relief under chapter 11 of the Bankrupcty Code.

## FIRST COUNT
### Exception From Discharge Pursuant to 11 U.S.C. § 523

65. All prior allegations in this complaint are incorporated by reference as if set forth fully herein.

66. Pursuant to 11 U.S.C. § 523(a)(2)(A), LG's claim against Defendant should be excepted from discharge because the debt is for money obtained by false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition.

**WHEREFORE,** Plaintiff demands judgment declaring that Plaintiff's claim against Defendant is not dischargeable in bankruptcy, together with any such other and further relief as the Court deems just.

## ENTRY OF APPEARANCE PURSUANT TO D.C.COLO.LAttyR 5(a)(3)

(A) The appearance of Gene W. Rosen, Esq. is being made on behalf of Plaintiff LG Funding LLC.

(B) Firm name: Gene Rosen's Law Firm – A Professional Corporation; office address: 200 Garden City Plaza, Suite 405, Garden City, New York 11530; telephone number: (212) 529-3600; primary CM/ECF e-mail address: Gene@GeneRosen.com.

(C) I hereby certify that I am a member in good standing of the bar of this court.

Dated: Garden City, New York
       September 22, 2020

                GENE ROSEN'S LAW FIRM
                A PROFESSIONAL CORPORATION
                Attorneys for Plaintiff

By: */s/ Gene W. Rosen*
     Gene W. Rosen, Esq.
     New York Office of Court Administration
       Registration No. 4435681
     200 Garden City Plaza, Suite 405
     Garden City, New York 11530
     Tel (212) 529-3600 Ext. 101
     Fax (347) 578-8793
     Gene@GeneRosen.com