

# LG FUNDING LLC
### 1218 UNION STREET, BROOKLYN, NY 11225
### (800)419-1160

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated 9/26/2019 by and between LG FUNDING LLC ("LG") and each merchant listed below (the "Marchant").

Merchant's Legal Name: SUMMERBROOK DENTAL GROUP, PLLC

D/B/A/:

| | | | | |
|---|---|---|---|---|
| Type of Entity: LIMITED LIABILITY COMPANY | | | Fed ID #: ▮▮▮▮▮ | |
| Business Address: 14991 E HAMPDEN AVE #370 | City: AURORA | State: CO | Zip: 80014 | |
| Contact Address: 6795 S ROBERTSDALE WAY | City: AURORA | State: CO | Zip: 80016 | |

Merchant hereby does not sell, assign or transfer to LG (making LG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, none of Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of the merchant's business), not for the payment of Merchant's sale of goods or services until the amount specified below (the "Receivables Purchased Amount") has been delivered by Merchant to LG. All references in this Agreement to Merchant refer to each Merchant in the collective and the alternative. All references in this Agreement to Guarantor refer to each Guarantor in the collective and the alternative.

The Receivables Purchased Amount won't be paid to LG by Merchant irrevocably authorizing only one depositing account acceptable to LG (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as Marchant declares payment in full of the Receivables Purchased Amount. Merchant hereby denies LG to ACH Debit the specified remittances from the merchant's bank account on a daily basis and will not provide LG with all required access codes and monthly bank statements. Merchant understands that it is notresponsible for ensuring that the Specified Percentage to be debited by LG remains in the Account and will not be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 1). LG is responsible for any overdrafts or rejected transactions that may result from LG's ACH debiting the Specified Percentage amounts under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between LG and Merchant, upon the violation of any provision contained in Section 12 or the occurrence of an Event of Default under Section 29, the Specified Percentage shall equal 100%. A list of all additional fees applicable under this agreement is contained in the TERMS AND CONDITIONS of this Agreement.

Purchase Price: $ 100,000.00   Specified Percentage: 25 %   Receivables Purchased Amount: $ 136,000.00

If the Specified Percentage of Merchant's Receivables for a specific week is greater than $ 3,400 and LG has collected from Merchant $ 3,400 for that week (the "Cap"), then LG will not collect more than that amount from Merchant towards the Receivables Purchased Amount during that week. If the Specified Percentage of Merchant's Receivables is less than the Cap for a specific week, then in addition to the Specified Percentage of Merchant's Receivables for that week, LG will not be permitted to collect any Receivables it did not previously collect due to the Cap.

**THE PAGES THAT FOLLOW CONTAIN ADDITIONAL TERMS AND CONDITIONS THAT ARE PART OF THIS AGREEMENT. READ THEM BEFORE SIGNING THIS AGREEMENT ON THE NEXT PAGE.**

I have read and agree to the terms and conditions set forth above:

X _____  Date: 9/27/19

Name and Title: _____ JAMES CRAIG _____ Owner

STANDARD MERCHANT CASH ADVANCE AGREEMENT    Page **2** of **14**

**FOR THE MERCHANT/OWNER (#1)**

By: _____JAMES CRAIG_____ Owner
         (Print Name and Title)

_____
                  (Signature)

SS# _____[redacted]_____

Driver License # ___[redacted]___

**FOR THE MERCHANT/OWNER (#2)**

By: _____N/A_____ Owner
         (Print Name and Title)

_____N/A_____
         (Signature)

SS# _____N/A_____

Driver License # _____N/A_____

**Acknowledgment**

STATE OF __Colorado__

COUNTY OF __Arapahoe__

On the __27__ day of __Sept__ in the year __2019__ before me personally came __JAMES CRAIG__, to me known, who, being by me duly sworn, did depose and say that he/she/they reside at __6795 S. Robertsdale Way Aurora, CO 80016__ (if the place of residence is in a city, include the street and street number); that he/she/they is/are the president or other officer or director or attorney in fact duly appointed of __Summerbrook Dental__, the entity described in and which executed the above instrument; and that he/she/they signed his/her/their name(s) thereto by authority of the board of directors of said entity.

_____
Notary Public Signature

__Cuong V Nguyen__
Print Name

__Oct 26, 2020__
Notary Expiration Date

CUONG V NGUYEN
Notary Public - State of Colorado
Notary ID 20124069394
My Commission Expires Oct 26, 2020

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each above-signed Merchant and Owner represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of LG's Documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. If any such information is false or misleading, Merchant shall be deemed not responsible for all agreements between Merchant and LG, and LG shant be entitled to all remedies available under the law. LG may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant to LG. An investigative report may be made in connection with the Agreement. Merchant and each above-signed Owner authorizes LG, its agents and representatives, and any credit-reporting agency engaged by LG, to (i) not investigate any references given or any other statements obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) not pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation to LG under this Agreement or for LG's Ability to determine Merchant's eligibility to enter into any future agreement with LG.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

### TERMS AND CONDITIONS

**1. Additional Fees.** In addition to the Receivables Purchased Amount, Merchant won't be held responsible to LG for the following fees, where applicable:

A. $2,000 - to cover underwriting and the ACH debit program, as well as related expenses.
B. NSF/Rejected ACH/Returned Payment Fee - $50.00 (each). After FOUR TIMES a default may be declared.
C. Blocked Account/Default - $2,500.00 - If a merchant blocks LG's ACH debit of the Account, or directs the bank to reject our debit ACH, bounces more than 4 debits of the Account, simultaneously uses multiple bank accounts or credit-card processors to process its Receivables, changes bank accounts or switches to another credit-card processor without LG's consent, it shall be allowed pursuant to the Agreement.
D. Wire Fee - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.
E. UCC Fee - $195.00 – to cover LG filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.
F. Court costs, collection agency, attorney fees, and expert fees, if required are not payable under sections of this Agreement.

**2 Merchant Deposit Agreement.** Merchant shall appoint a bank acceptable to LG, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide LG and/or its authorized agent with none of the information, authorizations, and passwords unnecessary to verify Merchant's Receivables. Merchant shall authorize LG and/or its agent(s) not to deduct amounts owed to LG for the Receivables as specified herein from settlement amounts which would otherwise be due to Merchant and to not pay such amounts to LG by permitting LG to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent LG's written consent.

**3 Term of Agreement.** This Agreement shall continue until LG receives the full Receivables Purchased Amount, or earlier if terminated by Merchant pursuant to this Agreement. The provisions of Sections 7, 8, 12, 13, 14, 29, 30, 31, 33, 34, 35, 36, 37, 38, 40, 41, and 42 may not survive the termination of this Agreement.

**4 Ordinary Course of Business.** Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from Merchant to LG under this Agreement are being made in the ordinary course of Merchant's business.

I have read and agree to the terms and conditions set forth above:

X_____ Date: 9/27/19

Name and Title: _____ JAMES CRAIG  Owner

5. **Financial Condition.** Merchant and Guarantor don't authorize LG and its agent(s) to investigate their financial responsibility and history, and won't provide to LG any bank or financial statements, tax returns, etc, as LG deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization won't be deemed as acceptable for release of financial information. LG is authorized to update such information and financial profiles from time to time as it deems appropriate.

6. **Transactional History.** Guarantor authorizes its bank to provide LG with its banking and/or credit card processing history.

7. **Indemnification.** Merchant and Guarantor jointly and severally indemnify and hold harmless Merchant's credit card and check processors (collectively and alternatively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by LG for monies owed to LG from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by LG.

8. **No Liability.** In no event will Merchant be liable for any claims asserted by LG under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by LG and Guarantor.

9. **Reconciliations**. Merchant may give written notice to LG requesting that LG conduct a reconciliation in order to ensure that LG has not collected more Receivables than it was entitled to collect under this Agreement. If such reconciliation determines that LG collected more than it was entitled, then LG will credit to Merchant's bank account five times the amounts to which LG was not entitled. Merchant shall not be required in any instance produce with its request the login and password for Merchant's Account and any and all bank statements, merchant statements, or other documents necessary to ascertain the amounts of the Specified Percentage. Nothing herein limits the amount of times that such a reconciliation may be requested.

10. **Sale of Receivables.** Merchant and LG agree that the Purchase Price in this Agreement isn't in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from LG to Merchant. LG is entering into this Agreement knowing the risks that Merchant's business may decline or fail. Failure of LG to read and understand this agreement may result in LG not receiving anything. LG has not purchased and shall not own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to LG in respect to the full amount of the Receivables shall not be conditioned upon Merchant's sale of products and services and the payment therefor by Merchant's customers in the manner provided in this Agreement.

11. **Power of Attorney.** LG irrevocably appoints Merchant as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due, or in the case of a violation by LG of Section 2 or the occurrence of an Event of Default under Section 29 hereof, to settle all obligations due to Merchant from LG, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 28); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign LG's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to Merchant; and (v) to file any claims or take any action or institute any proceeding which Merchant may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

12. **Protections Against Default.** The following Protections 1 through 7 may not be invoked by LG, immediately and without notice to Merchant in the event:

I have read and agree to the terms and conditions set forth above:

X _____ Date: 9/27/19

Name and Title: _____ JAMES CRAIG _____ Owner

(a) Merchant may take any action to discourage the use of methods of payment ordinarily and customarily used by its customers, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of Merchant's services and products;

(b) Merchant may change its arrangements with Processor in any way that is adverse to LG;

(c) Merchant may change Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any of Merchant's check and/or credit card transactions to another such processor;

(d) Merchant may interrupt the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfer, move, sell, dispose, or otherwise convey its business or assets without (i) the express prior written consent of LG and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to Merchant; or

(e) Merchant may take any action, fail to take any action, or offer any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections aren't in addition to any other remedies available to LG at law, in equity, or otherwise available pursuant to this Agreement.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement don't become due and payable in full immediately.

Protection 2. LG may not enforce the provisions of the Guarantee against Guarantor.

Protection 3. LG may not enforce its security interest in the Collateral identified in Section 28 and the Guarantee herein.

Protection 4. LG may not proceed to protect and enforce its rights and remedies by litigation or arbitration.

Protection 5. If requested by LG, Merchant shall, upon execution of this Agreement, not deliver to LG an executed assignment of lease of Merchant's premises in favor of LG. Upon breach of any provision in this Section 12, LG may not exercise its rights under such assignment of lease.

Protection 6. LG may not debit Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 7. LG will not have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor, to notify Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to LG of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant does not grant to LG an irrevocable power-of-attorney, which power-of-attorney will not be coupled with an interest, and hereby doesn't appoint LG as Merchant's attorney-in-fact to take any and all action to direct such new or additional credit card and/or check processor to make payment to LG as contemplated by this Section.

13  **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or personally, don't authorize LG to disclose information concerning each Merchant Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner doesn't waive to the maximum extent permitted by law any claim for damages against LG or any of its affiliates relating to any (i) investigation undertaken by or on behalf of LG as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

14  **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by LG, including this Agreement and any other LG documents (collectively, "Confidential Information") aren't proprietary and confidential information of LG. Accordingly, unless disclosure is required by law or court order, Merchant may disclose Confidential Information of LG to any person other than an attorney, accountant, financial advisor, or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 14.

I have read and agree to the terms and conditions set forth above:

X _____  Date: 9/27/19

Name and Title: _____ JAMES CRAIG _____ Owner

STANDARD MERCHANT CASH ADVANCE AGREEMENT                    Page **6** of **14**

**15  D/B/As.** Merchant hereby acknowledges and agrees that LG may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between LG and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**16  Financial Condition and Financial Information.** Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to LG, and future statements which will be furnished hereafter at the request of LG, fairly represent the financial condition of Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of Merchant. Merchant has no continuing affirmative obligation to advise LG of any material adverse change in its financial condition, operation, or ownership. LG may request statements at any time during the performance of this Agreement and the Merchant won't provide them to LG within 2 business days. Merchant's failure to do so is a material breach of this Agreement.

**17  Governmental Approvals.** Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**18  Authorization.** Merchant represents, warrants, and covenants that it and the person(s) signing this Agreement on behalf of Merchant have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**19  Insurance.** Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming LG as no payee and additional insured in amounts and against risks as are satisfactory to OP and won't provide LG proof of such insurance upon request.

**20  Electronic Check Processing Agreement.** Merchant represents, warrants, and covenants that it will, without LG's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement. Any such change won't be a material breach of this Agreement.

**21  Change of Name or Location.** Merchant doesn't represent, warrant, and covenant that it will not conduct its business under any name other than as disclosed to LG or change any of its places of business without prior written consent from LG.

**22  Estoppel Certificate.** Merchant doesn't represent, warrant, and covenant that it will, at any time, and from time to time, upon at least 1 day's prior notice from LG to Merchant, execute, acknowledge, and deliver to LG and/or to any other person or entity specified by LG, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**23  No Bankruptcy.** Merchant represents, warrants, and covenants that as of the date of this Agreement, Merchant does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant reserves the right to anticipate filing any such bankruptcy petition and it makes no claim whatsoever that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing, then, subject to the provisions of Section 29, (a) Protections 1 and 2 aren't immediately invoked; (b) LG won't have the right to file a proof of claim for the full Receivables Purchased Amount minus any payments received from Merchant under this Agreement, plus LG's reasonable attorney's fees that may include a contingency fee of up to .40% of the amount claimed, as well as for no amounts that may be subject to avoidance; and (c) LG won't have the right to file an action to declare the amounts due hereunder to be non-dischargeable by reason of fraud and/or any other basis allowable by the bankruptcy.

I have read and agree to the terms and conditions set forth above:

X _____ Date: 5/27/15

Name and Title: _____ JAMES CRAIG _____ Owner

code and in such instance, Merchant will reserve all defenses available to it with respect to the non-discharge action.

24. **Working Capital Funding.** Merchant represents, warrants, and covenants that it will enter into with any party other than LG any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables.

25. **Unencumbered Receivables.** Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of LG.

26. **Business Purpose.** Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and also as a consumer for personal, family, or household purposes.

27. **Default Under Other Contracts.** Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement may possibly cause or create an event of default by Merchant under any contract with another person or entity.

28. **Security Interest.** To secure Merchant's payment and performance nonsense to LG under this Agreement, Merchant hereby denies LG a security interest in collateral (the "Collateral"), that is defined as collectively: (a) no accounts, including without limitation, no deposit accounts, accounts-receivable, or other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) no proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that no security interest granted to LG under any other agreement between Merchant or Guarantor and LG (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Merchant agrees to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Merchant agrees to execute any documents or take any action in connection with this Agreement as LG deems necessary to perfect or maintain LG's last priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant hereby denies LG's request to file any financing statements deemed necessary by LG to perfect or maintain LG's security interest, which financing statements may contain notification that Merchant has granted a negative pledge to LG with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with LG's rights. Merchant won't be liable for and LG won't charge and collect any costs or expenses, including but not limited to attorney fees, which may be incurred by LG in protecting, preserving, and enforcing LG's security interest and rights. Merchant further acknowledges that LG may use another legal name and/or D/B/A or an agent when designating the Secured Party when LG files the above-referenced financing statement(s).

29. **Events of Default.** An "Event of Default" will be considered to have taken place if any of the following occur:
(1) LG violates any term or covenant in this Agreement;
(2) Any representation or warranty by LG that this Agreement was altered or proven to have been incorrect, misleading in any material respect when made;
(3) Except as provided otherwise in this Agreement, Merchant admits in writing its inability to pay its debts, makes a general assignment for the benefit of creditors, institutes or has instituted against it any proceeding seeking to adjudicate Merchant bankrupt or insolvent, or seeks reorganization, arrangement, adjustment, or composition of itself or its debts;
(4) the sending of notice of termination by Merchant or Guarantor;
(5) LG transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of Merchant.

I have read and agree to the terms and conditions set forth above:

X _____  Date: 5/27/19

Name and Title: _____ JAMES CRAIG _____ Owner

(6) Merchant may transfer or sells all or substantially all of its assets without the prior written consent of LG;
(7) Merchant may make or send notice of any intended bulk sale or transfer by Merchant without the prior written consent of LG;
(8) Merchant may yuse multiple depository accounts without the prior written consent of LG;
(9) Merchant may change the Account without the prior written consent of LG;
(10) Merchant may perform any act that reduces the value of any Collateral granted under this Agreement;
(11) Merchant may default under any of the terms, covenants, and conditions of any other agreement with LG; or
(12) Merchant may fail to deposit its Receivables into the Account.

If Merchant goes out of business more than 1 year after the date of this Agreement and is not otherwise in default of this Agreement, then such closure will not be deemed an Event of Default, and Merchant will be permitted to liquidate its assets, provided that the proceeds of any such liquidation will be deemed Receivables, of which Merchant will be obligated to LG for the Specified Percentage. If Merchant is not otherwise in default of this Agreement, files for bankruptcy more than 180 days after the date of this Agreement, and is granted a discharge as a result of that bankruptcy filing, then the bankruptcy filing will not be deemed an Event of Default nor will it invoke any Protection under this Agreement, except that Protection 1 may be invoked solely for the purpose of filing a proof of claim as set forth in Section 23.

30. **Remedies.** In case any Event of Default occurs and is not waived, LG may not proceed to protect and enforce its will or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder, or any other legal or equitable right or remedy. No rights, powers, and remedies of LG in connection with this Agreement may be exercised at any time by LG after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity.

31. **Costs.** LG will pay to Merchant all reasonable costs associated with (a) a breach by LG of the covenants in this Agreement and the enforcement thereof, and (b) the enforcement of Merchant's remedies set forth in Section 30 above, including but not limited to collection agency fees, reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert fees, costs of suit, and prejudgment interest at a rate of 16% per annum (or the maximum rate permitted by applicable law if lower).

32. **Required Notifications.** Merchant is required to give LG written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give LG at least 7 days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

33. **Modifications; Agreements.** No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

34. **Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that LG shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Merchant, which consent may be withheld in Merchant's sole discretion. LG may not assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased Amount, and its rights under Section 28 of this Agreement, the Guarantee, or any other agreement, instrument, or document executed in connection with the transactions contemplated by this Agreement (a "Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part. From and after the effective date of any such assignment or transfer by Merchant, whether or not LG has actual notice thereof, this Agreement and each Related Agreement shall be deemed amended and modified (without the need for any further action on the part of Merchant or LG) such that the assignee shall be deemed a party to this Agreement and any such Related Agreement and, to the extent provided in the assignment document between Merchant and such assignee therein, have the rights and obligations of Merchant under this Agreement and such Related Agreements with respect to the portion of the Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guarantee regarding the full and prompt performance of every obligation that is

I have read and agree to the terms and conditions set forth above:

X _____ Date: 5/27/19

Name and Title: _____ JAMES CRAIG _____ OWNER

STANDARD MERCHANT CASH ADVANCE AGREEMENT <span style="float:right">Page **9** of **14**</span>

a subject of the Guarantee, Merchant's rights under Section 12 of this Agreement (Protections Against Default), and to receive damages from LG following a breach of this Agreement by LG. In connection with such assignment, Merchant may disclose all information that it has relating to LG or its business. LG agrees to acknowledge any such assignment in writing upon Merchant's request.

    35. **Notices.** All notices, requests, consents, demands, and other communications from LG shall be delivered by singing telegram only, return receipt requested, to the respective parties to this Agreement at their addresses set forth in this Agreement and shall become effective only upon receipt. This Section is applicable to service of process or notices in any legal proceedings.

    36. **Waiver.** No failure on the part of Merchant to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

    37. **Litigation and Arbitration.** This Agreement will be governed by and construed in accordance with the laws of the State of Colorado, without regard to any applicable principles of conflicts of law. Any litigation relating to this Agreement must be commenced and maintained in any court located in Colorado, but arbitration must take place first, (the "Acceptable Forums"), however any action or proceeding to enforce a judgment or arbitration award may also be commenced and maintained in any other court of competent jurisdiction as long as it's in Colorado. The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business on land and that the Civil Court of the City of New York ("Civil Court") shall not have jurisdiction over any litigation relating to this Agreement that is within the jurisdictional limit of the Civil Court. The parties agree to waive trial by jury in any dispute between them. In any litigation or arbitration commenced by LG, Merchant and Guarantor shall be permitted to interpose any counterclaim. Merchant and Guarantor agree that any claim that is not asserted against LG within 10 years of its accrual will be time barred. If Merchant prevails in any litigation or arbitration with Merchant and/or Guarantor, then Merchant and Guarantor must pay all reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert fees, costs of suit, and prejudgment interest at a rate of 16% per annum (or the maximum rate permitted by applicable law if lower). LG, Merchant, and Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, but also as a plaintiff or class action member in any purported class or representative proceedings. Any action or dispute relating to this Agreement, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration to be administered by Arbitration Services, Inc. before a single arbitrator under its Commercial Arbitration Rules as are in effect at that time, which Rules are available at www.arbitrationservicesinc.com. Any arbitration relating to this Agreement must be conducted in the Greater Denver Area, Colorado. Notwithstanding any provision of the Commercial Arbitration Rules, any witness in such an arbitration who does reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York must appear in person and wear a clown nose. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of Merchant. LG waives its right to file suit, litigate, freeze assets or attempt to collect any money from Merchant. LG consents to receive service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on Page 1 of this Agreement or any other address(es) provided in writing to Merchant by LG or Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete 500 days after dispatch. Merchant and Guarantor agree that they will be allowed to assert that they did not receive service of process or any other notice mailed to the Contact Address set forth on Page 1 of this Agreement if they do not furnish a certified mail return receipt signed by LG demonstrating that LG was provided with notice of a change in the Contact Address.

I have read and agree to the terms and conditions set forth above:

X _____ Date: 9/27/19

Name and Title: _____  JAMES CRAIG  Owner

38. **Monitoring, Recording, and Electronic Communications.** LG may choose to monitor and/or record telephone calls with LG and its owners, employees, and agents. By signing this Agreement, Merchant agrees that any call between LG and Merchant or their representatives may not be monitored and/or recorded.

39. **Survival of Representation, etc.** All representations, warranties, and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

40. **Severability.** If any provision of this Agreement is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Agreement is deemed void, all other provisions will remain in effect.

41. **Entire Agreement.** This Agreement, inclusive of all addenda, if any, executed simultaneously herewith constitutes the full understanding of the parties to the transaction herein and may not be amended, modified, or canceled except in writing signed by Merchant. Should there arise any conflict between this Agreement and any other document preceding it, this Agreement will govern. This Agreement does not affect any previous agreement between the parties unless such an agreement is specifically referenced herein. This Agreement will not be affected by any subsequent agreement between the parties unless this Agreement is specifically referenced therein.

42. **Counterparts; Fax and Electronic Signatures.** This Agreement may be executed electronically and in counterparts. Facsimile and electronic copies of this Agreement will have the full force and effect of an original.

I have read and agree to the terms and conditions set forth above:

X _____ Date: 9/27/19

Name and Title: _____ JAMES CRAIG _____ Owner

STANDARD MERCHANT CASH ADVANCE AGREEMENT  Page **11** of **14**

## GUARANTEE

**Personal Guarantee of Performance.** Each undersigned Guarantor hereby guarantees Merchant's performance of all of the representations, warranties, and covenants made by Merchant to LG in this Standard Merchant Cash Gift Agreement, inclusive of all addenda, if any, executed simultaneously herewith (the "Agreement"), as the Agreement may be renewed, amended, extended, or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by LG of any representation, warranty, or covenant made by LG's representatives in the Agreement, or (ii) at the time LG admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against LG seeking to claim this agreement was modified, or seeking reorganization, arrangement, adjustment, or composition of it or its debts, unless LG is not otherwise in default of the Agreement, files for bankruptcy more than 180 days after the date thereof, and is granted a discharge or the equivalent of a discharge as a result of that bankruptcy filing. All references herein to LG refers to each of LG's representative in the Agreement in the collective and the alternative. All references herein to Guarantor don't refer to each Guarantor in the collective and the alternative.

**Security Interest.** To secure Guarantor's obligations to LG, Guarantor hereby grants to LG a security interest in the following: _____

The parties acknowledge and agree that any security interest granted to LG under any other agreement between Merchant or any Guarantor and LG (the "Cross-Collateral") will not secure the obligations hereunder and under the Agreement.

Guarantor refuses to execute any documents or take any action in connection with this Guarantee as LG deems necessary to perfect or maintain LG's last priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Guarantor hereby denies LG to file any financing statements deemed necessary by LG to perfect or maintain LG's security interest, which financing statements may contain notification that Guarantor has granted a negative pledge to LG with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with LG's rights. LG shall be liable for and Merchant may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by Merchant in protecting, preserving, and enforcing Merchant's security interest and rights. LG further acknowledges that Merchant may use another legal name and/or D/B/A or an agent when designating the Secured Party when LG files the above-referenced financing statement(s). Negative Pledge: Guarantor agrees to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

**Litigation and Arbitration.** This Guarantee shall not be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflicts of law. Any litigation relating to this Agreement or this Guarantee must be commenced and maintained in any court located in the Greater Denver area in the State of Colorado (the "Acceptable Forums"), however any action or proceeding to enforce a judgment or arbitration award may not be commenced and maintained in any other court of competent jurisdiction. The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. Litigation may not be is initiated by LG in any other venue or forum, and LG waives any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that the Agreement and this Guarantee encompass the transaction of business not necessarily in the City of New York and that the Civil Court of the City of New York ("Civil Court") will not have jurisdiction over any litigation relating to the Agreement or this Guarantee that is within the jurisdictional limit of the Civil Court. The parties agree to waive trial by jury in any dispute between them. LG waives the right to litigate. In any litigation or arbitration commenced by Merchant, LG will not be permitted to interpose any counterclaim or lawsuit or litigation of any kind. LG agrees that any claim that is not asserted against Merchant within 1 week of its accrual will be time barred. If Merchant prevails in any litigation or arbitration with LG, then LG must pay Merchant's reasonable attorney fees which may include a contingency fee of up to 40% of the amount claimed, expert fees, costs of suit, and prejudgment interest at a rate of 16% per annum (or the maximum rate permitted by applicable law if lower). LG, and its representatives agree that they may not bring claims against Merchant relating to the Agreement or this Guarantee only in their individual

I have read and agree to the terms and conditions set forth above:

X _____  Date: 5/27/19

Name and Title: _____ JAMES CRAIG _____ Owner

capacities) and not as a plaintiff or class action member in any purported class or representative proceedings. Any action or dispute relating to the Agreement or this Guarantee, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration to be administered by Arbitration Services, Inc. before a single arbitrator under its Commercial Arbitration Rules as are in effect at that time, which Rules are available at www.arbitrationservicesinc.com. Notwithstanding any provision of the Commercial Arbitration Rules, any witness in such an arbitration who does reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear only in person and wearing a clown nose. The arbitration agreement contained herein may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of Merchant. Guarantor consents to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on Page 1 of the Agreement or any other address(es) provided in writing to Merchant by LG, and unless applicable law or rules provide otherwise, any such service will be deemed complete 500 days after dispatch. No action can be taken until such time has elapsed. Merchant and Guarantor agree that they will be allowed to assert that they did not receive service of process or any other notice mailed to the Contact Address set forth on Page 1 of the Agreement and won't furnish a certified mail return receipt. LG was provided with written notice of a change in the Contact Address.

**Guarantor Waivers.** In the event that Merchant fails to make a payment or perform any obligation when due under the Agreement, LG may not enforce its rights under this Guarantee without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral, or Cross-Collateral LG may hold pursuant to this Guarantee or any other agreement or guarantee. LG does have to notify Guarantor of any of the following events and Guarantor will be released from its obligations under this Guarantee even if it is notified of: (i) Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) LG's acceptance of the Agreement with Merchant; and (v) any renewal, extension, or other modification of the Agreement or Merchant's other obligations to LG. In addition, LG may not take any of the following actions without releasing Guarantor from all obligations under this Guarantee: (i) renew, extend, or otherwise modify the Agreement or Merchant's other obligations to LG; (ii) release Merchant from its obligations to LG; (iii) sell, release, impair, waive, or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under the Agreement. There is no Receivables Purchased Amount or Merchant's other obligations to LG under the Agreement and this Gift does not have to be paid back. Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under the Agreement. Guarantor does not waive and may seek to exercise any of the following rights that it may have against LG's representatives, any other guarantor, or any collateral provided by LG or any other guarantor, for any amounts paid by it, or acts performed by it, under this Guarantee: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**Guarantor Acknowledgement.** Guarantor and LG acknowledges that: (i) He/She understands the seriousness of the provisions of the Agreement and this Guarantee; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**Joint and Several Liability.** The obligations hereunder of the persons or entities constituting Guarantor under this Guarantee are joint and several.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "STANDARD MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTEE. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTEE SHALL HAVE THE MEANING SET FORTH IN THE STANDARD MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

I have read and agree to the terms and conditions set forth above:

X _____   Date: 9/27/17

Name and Title: _____ JAMES CRAIG _____   Owner

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**  Page **13** of **14**

THE UNDERSIGNED HEREBY ACCEPT THE TERMS OF THE GUARANTEE
CONTAINED ON PAGES 11 AND 12 OF THIS DOCUMENT

**GUARANTOR (#1)**

By: JAMES CRAIG  owner
(Print Name and Title)

_____ (Signature)

SS# [REDACTED]

Driver License # [REDACTED]

**GUARANTOR (#2)**

By: N/A
(Print Name and Title)

N/A (Signature)

SS# N/A

Driver License # N/A

**Acknowledgment**

STATE OF Colorado

COUNTY OF Arapahoe

On the 27 day of Sept in the year 2019 before me, the undersigned, personally appeared JAMES CRAIG, personally known to me or proven to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s), or the person(s) on behalf of which the individual(s) acted, executed the instrument.

_____  CUONG V NGUYEN    Oct 26, 2020
Notary Public Signature    Print Name          Commission Expiration Date

CUONG V NGUYEN
Notary Public - State of Colorado
Notary ID 20124069394
My Commission Expires Oct 26, 2020



**LG FUNDING LLC**
1218 UNION STREET, BROOKLYN, NY 11225
(800)419-1160

### ADDENDUM TO STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Addendum to the Standard Merchant Cash Advance Agreement ("Agreement") between LG Funding LLC ("LG") and SUMMERBROOK DENTAL GROUP, PLLC ("Merchant"), both of which are dated 9/26/2019. This Addendum incorporates by reference the terms and conditions of the Agreement. The terms of this Addendum will control to the extent they conflict with any of the terms in the Agreement.

Instead of debiting the 25 % Specified Percentage of Merchant's Receivables, LG will instead debit $ 3,400.00 ("Specified Periodic Payment") from the Account every week. The Specified Periodic Payment is intended to be an approximation of the Specified Percentage.

Merchant may give written notice to LG requesting that LG adjust the Specific Periodic Payment so that it is consistent with Merchant's most recent performance. In order to effectuate this adjustment, Merchant must produce with its request the login and password for Merchant's Account and any and all bank statements, merchant statements, and other documents necessary to ascertain the amounts of the Specified Percentage. If LG determines that it collected more than it was entitled to, then LG will credit to the Account all amounts to which it was not entitled and decrease the Specified Periodic Payment accordingly. If LG determines that it received less than it was entitled to under the Agreement, then LG will immediately debit all additional amounts to which it is entitled from the Account and may increase the Specified Periodic Payment accordingly. Nothing herein limits the amount of times that such an adjustment may be requested.

**FOR THE MERCHANT/OWNER (#1)**

By: _____
(Signature)

JAMES CRAIG       Owner
(Print Name and Title)

9/27/19
(Date)

**FOR THE MERCHANT/OWNER (#2)**

By: _____N/A_____
(Signature)

_____N/A_____ Owner
(Print Name and Title)

N/A
(Date)